In re GLADES HEALTH CARE LIMITED, Debtor.

Bankruptcy No. 87–04372–BKC–TCB.

United States Bankruptcy Court, S.D. Florida.

March 30, 1988.

Arthur Halsey Rice, Miami, Fla., Gary J. Rotella, Ft. Lauderdale, Fla., for debtor.

Charles W. Throckmorton, Miami, Fla., for Barnett Bank Trust Co.

T.J. Del Rosso, Pahokee, Fla., Dory Burnham, West Palm Beach, Fla., co-trustees.

Curtis Lee Witters, West Palm Beach, Fla., for Del Rosso.

## ORDER VALUING BARNETT'S SECURED CLAIM

THOMAS C. BRITTON, Chief Judge.

The chapter 11 debtor has moved (CP 66) under 11 U.S.C. § 506 and B.R. 3012 for a determination of the extent to which Barnett Bank's claim is secured. The motion was heard March 8.

 I find that the judgment claim, which totalled $5,263,686 plus fees and costs when this petition was filed on December 7, 1987, is secured to the extent of $4,715,000. The balance of the claim is unsecured.

Barnett's lien is secured by a one-story, 120–bed nursing home and an adjoining 40–unit apartment complex upon a 5.28 acre tract. The property is leased by the debtor for a 50–year term which expires in

2033. The lessor has the option to terminate the lease 20 years earlier upon payment of the then market value of the improvements.

Barnett has argued that its collateral is worth $4.84 million and the debtor has argued that it is worth only $4.3 million. The evidence of value is in conflict.

I have accepted Mr. Ford's January 1988 income approach valuations of the nursing home and apartments, respectively $3.580 million and $1.135 million, but have rejected his ultimate conclusion which is based on his slightly higher market data approach for several reasons.

The property is in Pahokee, an agricultural community dominated by the sugar cane industry. It is some 45 miles west of Palm Beach County. For the foreseeable future, the nursing home is largely dependant on medicaid patients whose payments presently are based on cost rather than market data. The nursing home cost $2.72 million. The primary function of the apartment complex is to provide housing for the nursing home staff. The potential income of both the nursing home and the apartments are, therefore, restricted and there is little chance that either facility will appreciate in value during the remainder of the lease term.

The actual income realized from the complex is, therefore, a more realistic measure of the actual market value than recent sales of other properties in very dissimilar areas. Pahokee has shown little indication it is likely to reflect the development characteristic of the adjacent areas of South Florida.

The debtor's primary contention has been that Barnett's lien does not include the debtor's furnishings and equipment, which have an estimated value of $257,000 in the nursing home and $65,000 in the apartments, or a total of $322,000.

It is undisputed that Barnett's original lien included this personal property and was duly perfected. The debtor argues that when Barnett obtained its prepetition foreclosure judgment, its lien merged into the judgment and thereafter ceased to exist as a perfected lien. The foreclosure judgment was not docketed with the sheriff.

Therefore, the debtor argues, bankruptcy entitles it under § 544 (the strong arm clause which gives a trustee and a chapter 11 debtor-in-possession the rights of a judgment lien creditor without notice of unperfected liens) to disregard Barnett's lien on the personal property.

Of course, if the debtor had not stayed the foreclosure sale by filing for bankruptcy, Barnett would either have bid its judgment for both the real and personal property (which is included in the foreclosure sale) or been outbid by another purchaser. If outbid, Barnett would have been paid. The debtor seeks, therefore, to take advantage of a hiatus it created by its bankruptcy filing.

I have rejected the debtor's contention, because at least in Florida a lien does not merge into a foreclosure judgment *until the sale*. *City of Miami Beach v. Smith*, 551 F.2d 1370, 1374 (5th Cir.1977); *In re Johnson*, 29 B.R. 104, 105 (Bankr.S.D.Fla. 1983); *United Companies Fin. Corp. v. Brantley*, 6 B.R. 178, 189 (Bankr.N.D.Fla. 1980).[1]

---

1. The doctrine of merger as recognized in Florida is not intended to diminish the rights of the lien holder, but rather to provide a means of enforcing that lien. 32 *Fla.Jur.2d, Judgments and Decrees* § 87; *Nassau Realty Co. v. Jacksonville*, 144 Fla. 754, 198 So. 581 (Fla.1940).